UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GABRIEL PAULINO,
    *Petitioner*,
    *v.*
UNITED STATES OF AMERICA,
    *Respondent*.

Civil No. 3:18cv837 (JBA)

April 29, 2020

**RULING DENYING MOTION UNDER § 2255**

Petitioner Gabriel Paulino moves under 28 U.S.C. § 2255 to set aside the sentence imposed in Criminal No. 3:16cr172(JBA). The Government opposes. For the reasons that follow, Petitioner's motion is denied.

**I.  Background**

Petitioner Gabriel Paulino was convicted by guilty plea of Count One of the Indictment, possession with intent to distribute heroin in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(C), and Count Three of the Indictment, possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(I) and (c)(2). (Judgment, *United States v. Paulino*, No. 3:16cr172(JBA), ECF No. 44 (D. Conn. May 11, 2017).) Petitioner pled guilty pursuant to an agreement with the Government. (Plea Agreement, *United States v. Paulino*, No. 3:16cr172(JBA), ECF No. 29 (D. Conn. Feb. 8, 2017).) The Government agreed to dismiss Count Two of the Indictment, which charged Petitioner with possession of a firearm by a convicted felon. (*Id.* at 8.) The parties' agreement recognized that under the Sentencing Guidelines, Petitioner's base offense level was thirteen and his Criminal History Category was IV, producing a sentencing range of 24 to 30 months of imprisonment. (*Id.* at 5.) When combined with the statutory mandatory minimum consecutive term of imprisonment of five years for Count Three, the parties recognized that Petitioner's Guidelines range was 84 to 90 months of imprisonment. (*Id.*) Petitioner also agreed to waive his right to appeal or collaterally attack his conviction "in any proceeding, including but not limited to a motion under 28 U.S.C. § 2255," and his right to appeal or collaterally attack his

sentence if that sentence did not exceed 84 months of imprisonment, although that waiver did not preclude him "from raising a claim of ineffective assistance of counsel in an appropriate forum." (*Id.* at 5-6.)

Petitioner was sentenced by this Court to 24 months of imprisonment on Count One and 60 months of imprisonment on Count Three, to be served consecutively as required by statute, for a total of 84 months of imprisonment. (Judgment at 1.) Petitioner was represented by Attorney Morad Fakhimi of the Office of the Federal Public Defender for the District of Connecticut through the entry of his plea, and by Attorney James Maguire of the Federal Defender's office at sentencing.

## II. Discussion

Petitioner moves to vacate, set aside, or correct his sentence under § 2255, claiming both "ineffective assistance of counsel during pretrial stage of proceeding" and actual innocence of the offense charged in Count Three. (§ 2255 Petition [Doc. # 1] at 5-6.)

### A. Ineffective Assistance of Counsel

To succeed on a § 2255 petition for ineffective assistance of counsel, a petitioner must demonstrate both 1) that his counsel did not provide "reasonably effective assistance," including "identify[ing] the acts or omissions [which] were outside the wide range of professionally competent assistance," and 2) that the allegedly ineffective acts or omissions had an "effect on the judgment." *Strickland v. Washington*, 466 U.S. 668, 687-91 (1984). In other words, to demonstrate entitlement to relief for ineffective assistance of counsel under § 2255, Petitioner must demonstrate both that his counsel provided ineffective assistance *and* that his counsel's ineffective performance was "prejudicial to [his] defense." *Id.* at 692.

#### i. Attorney Fakhimi's Representation

"Judicial scrutiny of counsel's performance must be highly deferential." *Id.* at 689. "Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional

assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* (internal quotation omitted).

Petitioner argues that Attorney Fakhimi provided constitutionally ineffective assistance of counsel in violation of Petitioner's Sixth Amendment rights by improperly pressuring Petitioner to plead guilty and by failing to pursue the "available, viable, stronger defense" to the offense charged in Count Three, *i.e.*, that Petitioner was actually innocent of that charge. (Mem. Supp. § 2255 Petition [Doc. # 1-2] at 6.) Petitioner claims that the "evidence provided to" Attorney Fakhimi by the Government "does not meet the nexus requirement" for a conviction under 18 U.S.C. § 924(c)[1], and thus, Petitioner argues, Attorney Fakhimi provided ineffective counsel by urging Petitioner to plead guilty to that charge.

In support of his position that the evidence against him on Count Three was insufficient to support a conviction, Petitioner argues that "[t]he CI in this case never identified the location" where the guns were found—that is, Petitioner's apartment—"as one where narcotics transactions took place." (*Id.* at 4.) Petitioner further argues that "law enforcement officers did not see any drug trafficking activity during their surveillance" of that location. (*Id.*) Petitioner explains that if the "location [had] been one where drugs were trafficked," then his roommates, "who cooperated with the New London Police[,] . . . would have conveyed that to investigators," but they did not, suggesting that he did not traffic any drugs from the location where the guns were found. (*Id.* at 5.) Petitioner also argues that the video recording of his confession regarding "being a drug dealer" "did not corroborate" the claim in an Investigation Report that Petitioner "stated he got the guns for his protection," and that "[t]his inconsistency would have created a credible issue before a jury, likely providing a reasonable doubt." (*Id.*) Petitioner suggests that alleged statement "is the only

---

[1] Section § 924(c)(1)(A) criminalizes possession of a firearm "in furtherance of" a drug trafficking crime.

3

evidence available to provide a connection between possession of a firearm" and drug trafficking, and "would not be enough" to support a conviction under § 924(c) because it does not satisfy the "in furtherance" requirement. (*Id.*)

In light of this evidence, Petitioner argues that "any minimally competent attorney would have found a viable, stronger defense to the 924(c) count." (*Id.*) Instead, Petitioner asserts that Attorney Fakhimi pressured him to plead guilty to Count Three. (*See* Petitioner's Aff. Supp. § 2255 Petition [Doc. # 1-1].) Specifically, Petitioner alleges that Attorney Fakhimi "visited [him] only a few times" and "never explained to [him] what Count three actually meant," but rather Attorney Fakhimi's "only explanation was having a gun and drugs in the same place is a 924(c)[] and there was no way [] he could get" Count Three "dropped." (*Id.* ¶ A.) Petitioner alleges that he told Attorney Fakhimi that he "didn[']t feel comfortable taking a plea when [he] didn't understand the charge," and Attorney Fakhimi responded that the "feds do not lose at trial and judges sentence defendants to the max after trial conviction," so Petitioner should "do what he suggested" and "Take whatever plea the Government offered." (*Id.* ¶ B.) Following a conversation in which Attorney Fakhimi "contacted [Petitioner's] wife, Stacey Arbour, and told her she needs to convince [him] to take the deal," Petitioner told Attorney Fakhimi that he was "considering taking the plea offer." (*Id.* ¶ C.) Petitioner alleges that Attorney Fakhimi "explained [he] would plea[d] to count one and two and would get between 46 and 57 months pleading to count one and two." (*Id.*) Petitioner claims that "[a]fter [he] signed the plea," Attorney Fakhimi "told [him he] was facing 60 to 84 months and there was nothing he could do about it," but "assured" Petitioner that he would not get more than sixty months and reminded him that he would have gotten "no less than 30 years at trial." (*Id.* ¶ D.) Petitioner alleges that before entering his guilty plea, he and Attorney Fakhimi "rehearsed what [he] needed to say in front of the judge, 'for it to work.'" (*Id.* ¶ E.)

The Government responds that the assistance provided by Attorney Fakhimi was not constitutionally ineffective under the deferential *Strickland* standard. Specifically, the

Government argues that "[c]ounsel's conclusion as to how best to advise a client in order to avoid, on the one hand, failing to give advice and, on the other, coercing a plea enjoys a wide range of reasonableness because '[r]epresentation is an art,'" (Gov't Opp. [Doc. # 10] at 11 (quoting *Strickland*, 466 U.S. at 693)), and that Attorney Fakhimi's counsel regarding whether to accept the Government's plea offer was within that "wide range of reasonableness." Counsel "rendering advice" in the "critical area" of whether to accept a plea offer "may take into account, among other factors, the defendant's chances of prevailing at trial, the likely disparity in sentencing after a full trial as compared to a guilty plea (whether or not accompanied by an agreement with the Government), whether the defendant has maintained his innocence, and the defendant's comprehension of the various factors that will inform his plea decision." *Purdy v. United States*, 208 F.3d 41, 45 (2d Cir. 2000).

The Government relies heavily on the Declaration of Attorney Fakhimi, which refutes the majority of Petitioner's allegations regarding their interactions. (*See* Ex. D (Fakhimi Decl.) to Gov't Opp. [Doc. # 10-4].) Attorney Fakhimi represents that he "met with [Petitioner] in person several times during the first three months of the pendency of his federal case," at which time Attorney Fakhimi "provide[d] Mr. Paulino a complete copy of the evidence provided by the government," and they "had lengthy discussions about the effect of his recorded confession, as well as the effect of the statements that his roommates had given the police against him." (*Id.* ¶ 5.) Attorney Fakhimi also represents that "he never told Mr. Paulino that mere proximity of drugs and guns automatically satisfies the elements" of a § 924(c) charge, but he did "warn [Petitioner] that the proximity of guns during drug selling activities, if coupled with appropriate circumstances . . . could lead to a permissible inference at trial that" the guns were possessed in furtherance of drug trafficking activity. (*Id.* ¶ 15.)

Attorney Fakhimi agrees that Petitioner "wanted a negotiated resolution, but on his terms, one that would involve the government dropping the 924(c) charge in exchange for his plea to the other two counts." (*Id.* ¶ 8.) Attorney Fakhimi thus "spent a number of weeks

5

attempting, to no ultimate avail, to convince the government to agree to a negotiated disposition of the case in accordance with Mr. Paulino's wishes – that is, a disposition in which the government would drop the 924(c) charge in exchange for Mr. Paulino's plea to" the other two counts of the Indictment. (*Id.* ¶ 9.) Attorney Fakhimi agrees that he told Petitioner that he was unable to get the § 924(c) charged "dropped" after he was unable to persuade the Government to do so "[a]fter several weeks of what amounted to protracted begging" on that point. (*Id.* ¶ 15.)

Attorney Fakhimi "informed Mr. Paulino that the time to decide between trial and" the government's existing plea offer "was at hand" only once "it eventually became clear that the government was immovable" regarding the 924(c) charge. (*Id.* ¶ 10.) Attorney Fakhimi represents that, at that time, he explained to Petitioner that he is "not afraid of defending any and all cases at trial," and that "whether or not to proceed to trial was exclusively [Petitioner's] decision to make," but also that "the evidence against him was strong; and, that [Attorney Fakhimi's] recommendation was for him to decide to seek a negotiated resolution." (*Id.*)

According to Attorney Fakhimi, after he made that recommendation, "Mr. Paulino said that he would make his decision in due time" and "[e]ventually . . . decided to accept the government's plea offer" and "never expressed any reservations about his guilty plea for any reason." (*Id.* ¶¶ 10, 16.) At that time, Attorney Fakhimi represents that he and Petitioner "reviewed the plea agreement," which required Petitioner to plead guilty to the § 924(c) charge in Count Three, "and [Petitioner] repeatedly indicated that he understood that the agreement did not bind the court, that the court could impose whatever sentence it thought proper within the limits of the statutes involved." (*Id.* ¶ 11.)

The Government argues that the Plea Agreement and the transcript of the hearing at which Petitioner entered his guilty plea confirm Attorney Fakhimi's representations regarding Petitioner's knowledge and decision-making. (Gov't Opp. at 2.) The Agreement

plainly sets out the charges to which Petitioner agreed to plead guilty, including the § 924(c) charge in Count Three, and the applicable sentencing minimums and ranges, including the 60-month mandatory minimum on Count Three, required to be served consecutively, producing a sentencing range of 84 to 90 months. (Plea Agreement at 2, 4-5.) Moreover, during the entry of his guilty plea, Petitioner confirmed to the Court that he had not had any difficulty communicating with Attorney Fakhimi, (Ex. B to Gov't Opp. (Tr. of Plea Hearing) [Doc. # 10-2] at 6), that he had enough opportunity and information about the Government's evidence to discuss his case with counsel and was fully satisfied with Attorney Fakhimi's advice and representation (*id.* at 10), that he had discussed the Plea Agreement with Attorney Fakhimi, (*id.* at 18), and that no one had threatened him or intimidated him in any way that caused him to plead guilty, (*id.* at 27).

The Court agrees that the Plea Agreement and the Hearing Transcript generally corroborate Attorney Fakhimi's representations about his communications with Petitioner and contradict Petitioner's allegations regarding his lack of knowledge and understanding in agreeing to plead guilty to Counts One and Three. However, because the Court concludes that Petitioner's motion fails on other grounds, *see infra* p. 8-12, there is no need for a hearing with regard to the effectiveness of Attorney Fakhimi's representation of petitioner.

**ii.    Prejudice**

To demonstrate prejudice as required for any ineffective assistance of counsel claim under § 2255, a petitioner must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* "Even serious errors by counsel do not warrant granting habeas relief where the conviction is supported by overwhelming evidence of guilt." *Lindstadt v. Keane*, 239 F.3d 191, 204 (2d Cir. 2001).

Petitioner argues that he was prejudiced by Attorney Fakhimi's allegedly ineffective assistance because, if he had access to adequate counsel, he "would have chose[n] to plead guilty to count two, rather than the more punitive count three, and proceeded to trial on that charge had the government not dismissed count three." (Mem. Supp. § 2255 Petition at 6.) Thus, the Court must determine whether there is a "reasonable probability" that but for the alleged errors by Attorney Fakhimi, "the result of the proceeding would have been different" such that Petitioner would have been offered the opportunity to plead to Count Two instead of Count Three or would have been found not guilty of Count Three at trial.

Attorney Fakhimi represents that he "spent a number of weeks attempting, to no ultimate avail, to convince the government to agree to a negotiated disposition of the case," which would allow Petitioner to plead guilty to Count Two instead of Count Three, but that— even "[a]fter several weeks of what amounted to protracted begging"—Attorney Fakhimi was unable to convince the Government to agree to such a disposition. (Fakhimi Decl. ¶ 9, 15.) The Government confirms that "[d]espite repeated requests from Attorney Fakhimi to allow[] the defendant to plead to the felon in possession" charge instead of the § 924(c) charge, "this offer was not made to the defendant and the defendant did not have that option." (Gov't Opp. at 15.) Petitioner makes no allegations which contradict these statements regarding Attorney Fakhimi's failed efforts to reach an agreement which would allow Petitioner to avoid a conviction on Count Three. (*See generally* Petitioner's Aff.) Thus, in light of Attorney Fakhimi's efforts to secure an agreement which allowed Petitioner to plead guilty to Count Two instead of Count Three and the Government's representation that no such plea agreement was available to Petitioner, there is not a "reasonable probability" that Petitioner could have obtained such an agreement but for the alleged errors by Attorney Fakhimi, and thus Petitioner has failed to demonstrate prejudice.

As to Petitioner's suggestion that he would have "proceeded to trial" on Count Three in the absence of such an agreement, the Government argues that the evidence which it

8

would have introduced at trial was "sufficient . . . to establish Paulino's guilt" of the offense charged in Count Three. (Gov't Opp. at 16.) At the plea hearing, the Government indicated that it "would submit testimony, physical evidence, documentary evidence," including evidence that "[d]uring the execution of the warrant" at Petitioner's apartment, "the agents recovered . . . 94 individually knotted bags of heroin, weighing over 20 grams of heroin; . . . identifications of Mr. Paulino; . . . two firearms; [including] a black-colored .9 millimeter Beretta, and a Silver Pigeon .12 gauge pump action shotgun, also a Beretta; . . . and plastic bags cut in a manner consistent with heroin packaging." (Tr. of Plea Hearing at 37-38.) The shotgun was found in the attic which served as Petitioner's bedroom, while the 9 millimeter Beretta was found underneath a sofa cushion on the first floor of the apartment. (Ex. 3 to § 2255 Petition (Investigation Report) [Doc. # 1-1].) After being advised of his *Miranda* rights, Petitioner described both firearms and their locations within the apartment, "admitted to being a drug dealer and stated he got the guns for his protection." (*Id.*)[2]

      The warrant was supported by an affidavit by officers of the New London Police Department who detailed information provided by a reliable confidential informant. (Ex. 1 to § 2255 Petition (Warrant Aff.) [Doc. # 1-1].) The informant had been at a party at an apartment, later identified as Petitioner's apartment, where a resident of that apartment known as "Tommy Good" "displayed a black colored 'Beretta' pistol and a pump action shotgun which he laid on his bed" and indicated that he "wanted to shoot" another party attendee. (*Id.*) The informant also indicated that he had "seen the pump action shotgun" at that residence "on multiple occasions within the last several weeks" and "has also seen that 'Tommy Good' has been in possession of the black colored 'Beretta' pistol since the initial fight" with the other party attendee. (*Id.*) Although Petitioner disputes that he is otherwise

---

[2] Petitioner disputes that he made this statement regarding the purpose of the guns, arguing that its credibility is weak because the statement was not captured during the video recording of his confession. *See supra* p. 3.

known as "Tommy Good," an officer with the New London Police Department "view[ed] 'Tommy Good's' public Facebook page" and "immediately recognized the photos of the male named 'Tommy Good' as Gabriel Paulino." (*Id.*) Moreover, the Investigation Report detailing the execution of the warrant at Petitioner's home indicates that both of Petitioner's roommates knew him as "Tommy." (Investigation Report.) One roommate denied any knowledge of guns in the apartment, while the other roommate stated that he had seen "Tommy" with a "pistol . . . in his waistband." (*Id.*)

"[T]he requirement in § 924(c)(1) that the gun be possessed in furtherance of a drug crime may be satisfied by a showing of some nexus between the firearm and the drug selling operation." *United States v. Finley*, 245 F.3d 199, 203 (2d Cir. 2001). "The fact-intensive nexus inquiry comes down to the question whether the firearm afforded some advantage (actual or potential, real or contingent) relevant to the vicissitudes of drug trafficking." *United States v. Alston*, 899 F.3d 135, 146 (2d Cir. 2018). Factors to consider in this inquiry include "the type of drug activity that is being conducted, accessibility of the firearm, the type of the weapon, whether the weapon is stolen, the status of the possession (legitimate or illegal), whether the gun is loaded, proximity to drugs or drug profits, and the time and circumstances under which the gun is found." *United States v. Chavez*, 549 F.3d 119, 130 (2d Cir. 2008) (internal quotations omitted).

Based on its review of the Government's evidence, the Court concludes that there is not a "reasonable probability" that Petitioner would have avoided a conviction on Count Three had he proceeded to trial. The Government's evidence demonstrates the required "nexus," especially in light of the accessibility of two firearms throughout the apartment, the close proximity in his bedroom of Petitioner's drugs for distribution and his shotgun, the illegitimate status of his possession of weapons in light of his earlier felony convictions, and Petitioner's statement that the guns were obtained for his protection as described in the Investigation Report. Thus Petitioner has not demonstrated that he suffered prejudice as a

result of the allegedly ineffective assistance of Attorney Fakhimi, and he is not entitled to relief under § 2255.

### B. Actual Innocence

Separately, Petitioner argues that he is "actually innocent of possession of a firearm in furtherance of a drug trafficking crime," but he makes no additional arguments and offers no additional evidence in support of that position, instead simply "realleg[ing] and restat[ing] fully" his arguments regarding Attorney Fakhimi's ineffective assistance. (Mem. Supp. § 2255 Petition at 6.) The Government responds that Petitioner "clearly knowingly and voluntarily pled guilty and entered into the [plea] agreement," wherein he "validly waived his right to collaterally attack his conviction and sentence for any other purpose other than ineffective assistance of counsel in a proper forum." (Gov't Opp. at 2.) Thus, the Government argues, Petitioner's actual innocence claim is barred by that waiver. (*Id.*)

In light of Petitioner's guilty plea and waiver of his right to collaterally attack his conviction, (*see* Plea Agreement at 5-6; Tr. of Plea Hearing at 24), and the absence of any evidence in support of his claim of actual innocence or any argument as to why such a claim should now be permitted, Petitioner's actual innocence claim is unavailing. *See Herrera v. Collins*, 506 U.S. 390, 401 (1993) ("Few rulings would be more disruptive of our federal system than to provide for federal habeas review of freestanding claims of actual innocence. . . [O]ur habeas jurisprudence makes clear that a claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits.").

## III. Conclusion

For the foregoing reasons, Petitioner's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 [Doc. # 1] is DENIED.

                      IT IS SO ORDERED.

                      _____/s/_____
                      Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 29th day of April 2020.